A. W. AND E. P. CLEGG v. JOHN DEBRUHL ET AL.

1. STAY OF EXECUTION—COSTS.—The agreement between parties to a judgment for the stay of execution, will not prevent the legal issuance of execution in behalf of the officers of court for the costs of the suit.
2. SHERIFF'S SALE.—See facts held sufficient to sustain the verdict negativing an alleged conversion of property seized by a constable under execution.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

In September, 1871, suits were instituted by C. Olfsen, district attorney of the 18th judicial district, against A. W. and E. P. Clegg, and many others, for taxes due by them for occupation and frontier bond tax, before John DeBruhl, a justice of the peace.

December 5, 1871, the district attorney, in behalf of the State, and B. C. Franklin and L. E. Trezevant, in behalf of the defendants, in the suit against Clegg & Clegg, and twenty-four other suits, made an agreement in writing as follows:

"It is agreed that the justice may enter judgment on the hearing without the necessity of calling a jury; that the judgments shall be entered *pro forma* for the amounts claimed for the plaintiff in the several cases; that notice of appeal shall be entered in each case by the party against whom the judgment is rendered; that the said Franklin and Trezevant, in

behalf of their clients, may, by filing appeal bonds, take up one or more of the cases named as test cases to the District Court; that the other cases shall abide the decision of the cases taken up on the first decision of said cases by the Supreme Court; and, in the meantime, no execution is to issue against the other parties defendant in said schedule of cases to which this agreement applies. * * * Should the final decision of the cases on appeal be in favor of the defendants, then the judgments rendered under the agreement shall be set aside by the justice, and the cases dismissed. In case the judgment on final appeal is in favor of the plaintiff, then the the judgment shall stand as final, and execution shall issue thereon.

" This agreement is made to avoid unnecessary cost and trouble to the courts, the county, and the parties. It is agreed that the cases taken to the District Court may be filed at the present term, now in session, and, with the consent of the court, may be taken up and disposed of at the present term, in order that the questions involved affecting the public interest may be decided as early as practicable by the District and Supreme Courts—the defense setting up the illegality, irregularity, and unconstitutionality of the taxes claimed from the defendants in the aforesaid suits, the same defense applying to all.

" The entries of the several judgments shall each refer to this agreement filed with Justice DeBruhl, J. P. (present) Galveston county."

Under this agreement judgment was rendered in favor of the State in all the cases, and several of the cases were appealed to the District Court and were not decided when this case was tried.

January 4, 1872, Justice DeBruhl issued execution against Clegg & Clegg for all the costs of the suit incurred by both plaintiff and defendants; and on the 13th January, P. C. Langville, as constable, levied upon three plows, the property of defendants, and worth $14 each.

May 25, 1872, Clegg & Clegg brought suit against De Bruhl, justice of the peace, Langville, the constable, and Johnson Reed, surety on Langville's official bond, for damages for the illegal issuance of the execution and the seizure and wrongful appropriation of the property levied on.

The defendants insisted upon the validity of the execution, the legal seizure, and regular sale of the property.

The judgment was rendered for the defendants, and Clegg & Clegg appealed. The other facts are sufficiently set out in the opinion.

*L. E. Trezevant,* for appellants.

The court erred in charging the jury, that if the execution was issued after the expiration of ten days from the rendition of the judgment, the jury should find for the defendant.

Appellants submit, that the justice of the peace had no right or authority to issue execution against the defendants for all the cost incurred by both parties in said suit, even after the expiration of ten days, when by agreement of counsel the judgment was to remain in abeyance, to abide a decision to be rendered in a few cases appealed to the District Court.

We could not issue execution by virtue of the judgment rendered against the defendants, for the defendant had not been finally cast in said suit, as the judgment was suspended to abide a decision to be rendered in the District Court. That an appeal would have the effect of suspending the judgment there can be no question, and thereby rendering the statute (Paschal's Dig., art. 6352, which counsel for appellees refer to) inoperative, which authorizes an execution against the party cast for all the cost incurred by both parties, and an execution could only be issued by virtue of a statute which says: "Each party shall be responsible to the officers of the court for the cost incurred in any suit by himself." (Paschal's Dig., art. 1486.)

Admitting that execution could issue, it could only be

against the defendant for the cost he himself had incurred, as he was not liable to an execution for all the cost incurred by both plaintiffs and defendant, unless the judgment was confirmed by the District Court.   (Sayles's Prac., sec. 641.)

Query: Suppose the District Court should reverse the judgment of the justice's court in the cases appealed as test cases: how would defendant recover his cost from the State?

In respect to the judgment, it is as if there was no judgment subsisting until the decision of the District Court confirming it.   (Briggs v. Wardwell, 10 Mass. 356.)

Again, appellants submit, that if the justice of the peace has no jurisdiction to issue said execution, he is liable for damages.

The issuing of an execution is a ministerial act, and an action will lie against a judge if he award a process which he has no jurisdiction to award.   (2 Hilliard on Torts, 168.)

The issuing of an execution is a ministerial act, for which a justice of the peace is liable to the party injured.   (Briggs v. Wardwell, 10 Mass., 356; 2 Gray, 570.)

*Wheeler* and *Rhodes*, for appellees, cited Paschal's Dig., arts. 987, 1637, 6352; sec. 21, art. 5, of Constitution of 1869; Legg v. McNeill, 2 Tex., 428; Perry v. Robinson, 2 Tex., 491; Cotton v. Campbell, 3 Tex., 495; Alley v. Booth, 16 Tex., 94.

IRELAND, ASSOCIATE JUSTICE.—The judgment entered in the justice's court does not, on its face, preclude the issuance of an execution for costs.   The judgment is, "It is also ordered that no writ of execution shall issue for the principal of said judgment, except on the condition set forth in the said agreement; but in case of non-compliance therewith by the defendant, then execution shall issue according to law."

There was no attempt to prove that execution for costs was to be stayed, and certainly the language of the judgment indicates very clearly that the "principal" debt was all that was to be stayed.

It may well be doubted whether, under our law giving officers the right to issue execution for costs on the adjournment of each term of the court, it is in the power of parties litigant to stay execution for costs. If they may do so by the concurrence of the officers of court, it must not be left in doubt whether such assent was had.

We therefore conclude, that the court did not err in its charge to the jury with reference to issuing execution after the expiration of ten days.

The plaintiff's own testimony negatives the allegation as to the oppressive conduct of the constable; and the finding of the jury on his branch of the case appears to be sustained. Nor is the allegation about a conversion of the property levied on sustained. It is in proof that the property was sold at the court-house door on the day appointed by the constable.

Plaintiff attempted to prove that he kept watch, and that no sale took place between half-past 9 o'clock a. m. and 4 p. m. But one of the watch says that it was a bitter cold day, and that he frequently went up stairs to warm and to listen to an important criminal trial that was going on. He says he was not away from watch exceeding twenty minutes at any one time. It is not improbable that a fair sale could have taken place in twenty minutes.

It would not consume a very great while to sell three plows. The general doctrine contended for by appellants is not denied. If an officer act corruptly or without jurisdiction, he might be held liable in damages to the injured party, but this does not present such a case. The property of appellants seems to have been sacrificed from a mistaken judgment on their part of their liability and duty. There is no error in the judgment and it is affirmed.

AFFIRMED.